IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIAM M., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:17-cv-296 |
| ) | |
| v. ) | |
| ) | By: Hon. Robert S. Ballou |
| NANCY A. BERRYHILL,[1] ) | United States Magistrate Judge |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff William M. ("William")[2] filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, William alleges that (1) the Administrative Law Judge ("ALJ"): (1) erred in giving little weight to the opinion of his treating psychologist; (2) improperly discounted his credibility; (3) improperly relied on his daily activities in rendering a credibility determination; and (4) erred in giving little weight to the hypothetical questions posed by his attorney at the administrative hearing. I find that substantial evidence supports the ALJ's opinion in its entirety. Accordingly, I **RECOMMEND DENYING** William's Motion for Summary Judgment (Dkt. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 14).

---

[1] William directed his complaint against Carolyn Colvin, who is no longer the Acting Commissioner of Social Security. The current Acting Commissioner of Social Security, Nancy Berryhill, has been added.

[2] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that William failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

William protectively filed for DIB on January 11, 2013, claiming that his disability began on March 21, 2012. R. 181–82. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 79, 99. On May 19, 2015, ALJ Geraldine H. Page held an administrative hearing to consider William's disability claim. R. 31–58. William was represented by an attorney at the hearing, which included testimony from William and vocational expert John Newman. Id.

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

On February 10, 2016, the ALJ entered her decision analyzing William's claim under the familiar five-step process,[4] and denying William's claim for disability. R. 8–22. The ALJ found that William suffered from the severe impairments of obesity, vertigo/dizziness, cervical pain, hernia with inguinal neuralgia, depressive and dependent personality, and anxiety disorders. R. 10. The ALJ found that these impairments did not meet or medically equal a listed impairment. R. 11–13. The ALJ further found that William retained the residual functional capacity ("RFC") to perform light work, except William can: (1) lift and carry 10 pounds frequently and 20 pounds occasionally; (2) stand, walk, and sit for six hours in an eight-hour workday; (3) occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs; (4) frequently reach overhead; (5) never be exposed to hazardous machinery; (6) only be moderately exposed to vibrating surfaces, unprotected heights, or climbing ladders, ropes, and scaffolds; (7) understand, remember, and execute simple instructions in repetitive, unskilled work; (8) work jobs that involve occasional interaction with the general public, coworkers, and supervisors; and (9) respond appropriately to supervision, coworkers, and usual work situations. R. 13. The ALJ determined that William cannot perform his past relevant work as a flagger, road roller operator, warehouse material handler, and welder helper. R. 20. However, the ALJ determined that William can work jobs that exist in substantial numbers in the national economy,

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Heckler v. Campbell, 461 U.S. 458, 460–62 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

such as assembler, packer, and inspector/tester/sorter. R. 20–21. Thus, the ALJ concluded that William was not disabled. R. 21.

William appealed the ALJ's decision to the Appeals Council, but his request for review was denied. R. 1–3. This appeal followed.

## ANALYSIS

William argues that (1) the ALJ erred in giving little weight to the opinion of his treating psychologist; (2) improperly discounted his credibility; (3) improperly relied on his daily activities in rendering a credibility determination; and (4) erred in giving little weight to the hypothetical questions posed by his attorney at the administrative hearing.

## Medical Evidence

William underwent a laparoscopic left inguinal hernia repair in July 2011. R. 303. Michael D. Goodrich, M.D., performed a "left ilioinguinal and left iliohypogastric nerve block" for continued pain on March 6, 2012. R. 323.

William returned to Dr. Goodrich on September, 18 2012. R. 315. William reported decreased pain after the March 2012 injection which lasted for two to three weeks before slowly returning to normal. Id. William "denie[d] any qualitative changes to his symptomatology with the exception of back pain." Id. William received a second nerve block injection. R. 317.

On January 21, 2013, William saw Tajal Raju, M.D., for management of his groin pain secondary to inguinal neuralgia that has been persistent since his surgery. R. 431. William reported sharp pain in his left groin that is most severe when sitting. Id. Dr. Raju explained that William was alert and oriented with normal mood and affect. R. 433. Physical examination in January, February, April, and June 2013 revealed "[n]o signs of depression," appropriate mood

4

and affect, normal gait, no acute distress, normal range of motion in the spine, normal sensation, and normal strength. R. 434, 440, 444, 448.

William saw Stacy C. Moore, FNP, on June 10, 2013 for dizziness and shaking in his hands. R. 635. Ms. Moore diagnosed depression, anxiety, panic attacks, and possible positional vertigo. R. 635–37.

On July 2, 2013, Dr. Raju diagnosed "a severe exacerbation of inguinal neuralgia." R. 565. Dr. Raju noted that William was diagnosed with anxiety and depression in December 2012. Id. Physical examination showed no signs of depression, no acute distress, and appropriate mood and affect. R. 567.

Dr. Raju explained on August 2, 2013 that "swimming in the pool really helped [William's] pain." R. 571. Physical examination showed no signs of depression, no acute distress, and appropriate mood and affect. R. 572.

William saw neurologist Jill B. Cramer, M.D., on August 19, 2013 for dizziness, gait problems, and tremors. R. 602. Physical examination showed diminished sensation in the right arm and left leg, slight tremor bilaterally, and some sway while walking, but otherwise showed normal findings such as full strength and intact coordination. R. 603–04. A mental status examination showed alertness, orientation, cooperative attitude, normal remote and recent memory, normal attention and concentration, normal language, and normal fund of knowledge. R. 604. Dr. Cramer diagnosed mild tremors bilaterally, vertigo, memory loss, gait disturbance, and scalp lesion. Id. A brain MRI on August 30, 2013 was normal. R. 620.

On August 20, 2013, William returned to Dr. Goodrich, who explained that William had seen a "60-70% pain reduction with [nerve block] injections and medical management" and that "[h]e had been able to perform his regular activities of daily living with greater ease following

5

the injections." R. 985. Dr. Goodrich implemented a "[l]eft spinal cord stimulator trial for chronic and unremittent left groin pain." Id. On August 27, 2013, William reported that his activity level improved significantly without pain. R. 984. William "was able to ride in a vehicle for several hours, which he had not been able to do previously. He has been able to perform his regular activities of daily living with much greater improvement." Id. Because of William's "remarkably good experience with the trial," he elected to proceed with a permanent spinal cord stimulator placement. Id.

On September 11, 2013, William saw Yongyue Chen, M.D. for a psychiatric evaluation. R. 640. Dr. Chen noted a history of depression not alleviated by anti-depressants, and that William is more irritable, has a low tolerance for noise, and experiences stress due to financial and familial problems. Id. Dr. Chen conducted a mental status examination, finding:

> No psychomotor agitation or retardation. The speech is of normal rate, tone and volume. The gait is WNL. Mood is "ok". Affect is congruent. The perception is without auditory or visual hallucination. The thinking process is linear, logic [sic] and goal directed. The thinking associations are tight. There is no obsessive, paranoic or delusional thinking content. There is no suicidal or homicidal thought. The patient is alert and oriented to time, place and person. The concentration, memory and fund of knowledge are grossly intact. Insight and judgment are fair. Estimated intelligence is average.

R. 641. Dr. Chen diagnosed major depressive disorder, prescribed anti-depressant medications, and recommended psychotherapy. R. 642.

On September 25, 2013, Dr. Raju stated that the spine stimulator trial decreased William's pain by more than 80%, although William explained that he increased his pain due to splitting wood days prior. R. 667. Physical examination showed no signs of depression, no acute distress, and appropriate mood and affect. Id.

William underwent permanent spinal cord stimulator placement surgery on October 8, 2013 due to "[c]hronic pain in the left inguinal region after a herniorrhaphy." R. 674–75. William went to the emergency room on October 10, 2013 for abdominal pain and nausea. R. 685. Physical examination was normal, as William denied confusion, was alert and oriented, and had normal speech, mood, affect, judgment, and insight. R. 685–87. David Lander, M.D., administered morphine, Ondansetron HCI, Pantroprazole Sodium, and sodium chloride. R. 689. William improved and was discharged after he expressed his desire "to go home." Id.

On November 3, 2013, William again reported to the emergency room for anxiety. R. 723. Eric K. Stanley, M.D., noted a history of panic attacks which William reported were initiated by loud noises and large groups and were becoming more frequent. Id. William explained that the medication Dr. Chen prescribed for his anxiety was ineffective. Id. Dr. Stanley found that William had a normal affect and was oriented to person, place, and time, but was anxious. R. 724. Dr. Stanley diagnosed anxiety. R. 727.

William saw Dr. Chen the next day for "worsening dysfunctional anxiety and irritability," nervousness, panic attacks, confusion, and occasional suicidal thoughts. R. 736. A mental status examination revealed normal speech, mood, affect, thinking process and association, alertness and orientation, concentration, and attention. R. 738. Dr. Chen noted that William's insight and judgment were fair and his estimated intelligence was average. Id. Dr. Chen increased William's anti-depressant dosage and encouraged him to attend group education regarding psychological problems and individual therapy. Id. Dr. Chen explained that William's mood gradually improved and he "gained better insight of the mental illness and learned coping skills." Id.

William returned to Dr. Chen on December 5, 2013 for his depression and anxiety. R. 851. Dr. Chen stated that William "responded well to in patient group therapy" and "reports

doing well in general" with an "ok" mood. Id. Mental status examination revealed normal speech, affect, thinking process and association, alertness and orientation, and "grossly intact" concentration and attention. R. 852. Dr. Chen noted that William's insight and judgment were fair and his estimated intelligence was average. Id. Dr. Chen continued William on his current medications and referred him to psychotherapy. R. 853. Dr. Chen found the same results and executed the same treatment plan in February 2014 and April 2014. R. 855–56, 858–59.

Also on December 5, 2013, William saw Don Bivins, M.D., for pain management. R. 797. His physical examination was normal except for a mildly depressed mood. R. 798. William rated his pain as a 7/10 and described it as sharp, stabbing, throbbing, and aching. R. 801. William explained that he can only sleep for about two hours per night, walk for 15 minutes at a time, and sit for 30 minutes at time. Id. William stated that walking, sitting, standing, bending, stooping, or turning his head exacerbate his pain, while heat, spinal cord stimulation, medicine, and pain patches alleviate his pain. Id. Dr. Bivins diagnosed neuralgia neuritis and radiculitis, myalgia and myositis, and muscle spasms. R. 805.

On January 20, 2014, William followed up with Dr. Cramer, reporting persistent tremors, persistent dizziness, and diminished memory and concentration. R. 814. Dr. Cramer stated that William's "[m]emory seems a little worse. He forgot food that he put into the microwave before he came down here today. He misplaces things easily. He cannot remember recent things, cannot remember his medication list, even though he could remember this previously." Id. Physical examination showed slow, halting but accurate speech, mild bilateral tremor, and "no cogwheel rigidity in the arms." R. 815. Dr. Cramer diagnosed tremor, vertigo or dizziness, neck pain, and memory loss. R. 815–16. Dr. Cramer prescribed propranolol for tremors and arranged for William to get his memory tested. R. 816.

8

William saw David W. Harrison, Ph.D, on April 18, 2014, who noted memory loss, depression, low self-esteem, anger, anxiety, and socially-avoidant behavior. R. 892, 894. William had speech halting and hesitancy, speech repetition impaired with "phonemic paraphasic errors and altered grammar sequences," good spatial awareness, severe depression after a Beck Depression Inventory-II exam, moderate anxiety after a Beck Anxiety Inventory exam, behavioral sequencing error, impaired memory, delayed memory, and impaired attention. R. 894–95. Dr. Harrison diagnosed relative left frontal dysfunction (mild) with developmental predisposition, moderate anxiety, severe depression, mild subcortical expressive dysphasia and dyslexia, and amotivational/apathetic syndrome. R. 896–97.

On April 21, 2015, William explained to Dr. Chen that he was "doing well" since the last appointment, that his marriage improved, and that he felt more hopeful with a better mood. R. 938–39. Mental status examination revealed normal speech, affect, thinking process and association, alertness and orientation, and "grossly intact" concentration and attention. R. 939. Dr. Chen noted that William's insight and judgment were fair and his estimated intelligence was average. Id. Dr. Chen continued William on antidepressants. Id.

On October 29, 2015, William saw Dr. Chen for depression and anxiety; he was more irritable but "ha[d] been doing well since [the] last appointment." R. 1030. Mental status examination revealed normal speech, affect, thinking process and association, alertness and orientation, and "grossly intact" concentration and attention. R. 1031. Dr. Chen noted that William had fair insight and judgment and average intelligence. Id. Dr. Chen continued William on antidepressants. R. 1032.

**Medical Opinions of Mental Impairments**

On January 21, 2014, state agency psychological consultant David Deaver, Ph.D, explained at the initial level of administrative review that William has mild difficulties in activities of daily living, social functioning, and concentration, persistence or pace. R. 73.

On June 12, 2014, state agency psychological consultant Eric Oritt, Ph.D, explained at the reconsideration level of administrative review that William has moderate difficulties in activities of daily living and social functioning, and mild difficulties in concentration, persistence, or pace. R. 90. Dr. Oritt found that William was moderately limited in the ability to: (1) remember locations and work-like procedures; (2) understand, remember, and execute very short instructions and detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting extreme behavior; and (9) respond appropriately in the work setting. R. 94–95. The ALJ accorded some weight to the state agency psychological consultant opinions. R. 18.

On November 13, 2015, clinical psychologist Lynn M. Bever, Ph.D, LCP, completed a check-box medical source statement concerning William's mental ability to do work-related activities. R. 1025–27. Dr. Bever explained that William has moderate difficulties with executing short, simple instructions. R. 1025. Dr. Bever stated that William has marked difficulties with: (1) remembering locations and work-like procedures; (2) understanding and remembering short,

10

simple instructions; (3) executing detailed instructions; (4) maintaining attention and concentration for extended periods; (5) performing activities within a schedule, maintaining regular attendance, and being punctual; (6) sustaining an ordinary routine without special supervision; (7) making simple work-related decisions; and (8) completing a normal workday or workweek. Id. Dr. Bever explained that William has extreme difficulties with understanding and remembering detailed instructions, working with or near others without being distracted by them, and performing at a consistent pace. Id. Dr. Bever stated that William's score of 44 on the Beck Depression Inventory II indicates severe depression. Id. Dr. Bever explained that an April 2014 neuropsychological evaluation showed "impaired memory functioning and findings consistent with left frontal lobe dysfunction." R. 1026.

Dr. Bever stated that William has marked difficulties responding appropriately to changes in a routine work setting and interacting appropriately with the public, supervisors, and co-workers. Id. Dr. Bever explained that William has extreme difficulties responding to work pressures in a usual work setting. Id.

**Treating Physician**

William argues that the ALJ erred in giving little weight to the opinion of Dr. Bever.

A treating physician's opinion which is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record" will receive controlling weight. 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Only acceptable medical sources can be considered treating sources entitled to the benefits of the treating physician rule. See SSR 06-03p. A treating source is one that has provided the claimant "with medical treatment

or evaluation and who has, or has had, an ongoing treatment relationship [with the claimant"]. 20 C.F.R. § 404.1527(a)(2).

If the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 404.1527(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r Soc. Sec. Admin., No. 2:09-cv-622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010) (citing Burch v. Apfel, 9 Fed. Appx. 255, 259 (4th Cir. 2001) (per curiam)).

The Fourth Circuit reiterated in Monroe v. Colvin that an ALJ must "build an accurate and logical bridge from the evidence to his conclusion," and the failure to do so is grounds for remand. 826 F.3d 176, 189 (4th Cir. 2016) (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)). "The failure of an ALJ to specify what treatment history or evidence does not support a particular opinion means 'the analysis is incomplete and precludes meaningful review.'" Knapp v. Colvin, No. 7:15-CV-348, 2016 WL 4447836, at *3 (W.D. Va. Aug. 1, 2016) (quoting Monroe, 826 F.3d at 191), report and recommendation adopted, No. 7:15-CV-00348, 2016 WL 4482419 (W.D. Va. Aug. 23, 2016). Monroe confirms the ALJ's obligation to explain the conclusions reached and identify the record evidence which supports those conclusions. Only then can a court meaningfully review whether substantial evidence supports the ALJ's decision.

As a certified psychologist, Dr. Bever is an "acceptable medical source." See Dickens v. Colvin, 2017 WL 318832, at *5 (M.D.N.C. Jan. 23, 2017) (explaining that an "acceptable

12

medical source" under the regulations is defined to include licensed physicians and licensed or certified psychologists). Because Dr. Bever provided William with a medical evaluation, her opinion is to be given controlling weight if it is well-supported by medically acceptable techniques and is consistent with the evidence of record. § 404.1527(c)(2).

The ALJ gave Dr. Bever's opinion little weight, explaining that the opinion was based on William's subjective complaints and was unsupported by clinical findings and the record as a whole. R. 18–19. Drs. Chen, Harrison, Stanley, and Cramer treated William for his psychological difficulties, but their objective findings on mental status examinations do not comport with Dr. Bever's restrictive opinion. William consistently had fair insight and judgment, normal speech, affect, thinking process and association, alertness and orientation, "grossly intact" concentration and attention, and average intelligence. See R. 604, 641, 724, 738, 851–52, 894–95, 939, 1031. The objective medical evidence is not consistent with Dr. Bever's conclusions that William has marked or extreme difficulties in his ability to maintain concentration and attention for extended periods, understand and remember short and simple instructions, work near others without being distracted by them, and maintain a consistent pace. Similarly, Dr. Bever's records do not support such restrictive limitations. William does not identify any evidence in the record corroborating Dr. Bever's opinion that the ALJ failed to discuss.

The ALJ accorded more weight to the opinions of the state agency psychological consultants, as their opinions were within their specialization and were more consistent with the objective medical evidence. Both consultants acknowledged diagnoses of anxiety and depression, yet found that the objective medical evidence does not indicate marked or extreme limitations in William's mental capacity to function in the workplace.

Here, the ALJ examined William's medical history and the relevant opinions and found that Dr. Bever's opinion was inconsistent with the objective medical evidence. Here, substantial evidence supports the conclusion to give little weight to Dr. Bever's opinion.

**Credibility and Activities of Daily Living**

William argues that the ALJ erred by improperly discounting his credibility[5] regarding his subjective allegations of pain and by relying in part on his activities of daily living.

On April 11, 2014, William completed an adult function report, explaining that he has trouble sleeping due to his pain, does not "do anything anymore except try to deal with [his] pain," and does not do household chores because he is "physically and emotionally incapable." R. 246–48. William stated that he does not drive, cannot use a microwave, and no longer hunts, fishes, gardens, socializes, or plays with his children. R. 246–49. William explained that he can make a sandwich for himself, and sometimes makes up to two meals a day. R. 247. William stated that his groin and back pain affect his ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and complete tasks. R. 250. William explained that he does not know how long he can walk without stopping to rest because he does not walk. Id. William stated that a spinal cord stimulator was permanently implanted in October 2013, and that he uses a cane for extra support. R. 251.

---

[5] In March 2016, the Social Security Administration superseded its policy on assessing the credibility of a claimant's statements, and ruled that "credibility" is not appropriate terminology to be used in determining benefits. See SSR 16-3p, 2016 WL 1119029 (S.S.A. Mar. 16, 2016). "[W]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." SSR 16-3p at *1. "In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character." Id. Thus, under SSR 16-3p, the ALJ is no longer tasked with making an overarching credibility determination and instead must assess whether the claimant's subjective symptom statements are consistent with the record as a whole.
   Here, SSR 16-3p was issued after the ALJ's consideration of William's claim, and both the ALJ's opinion and the parties' briefs speak in terms of a "credibility" evaluation. Accordingly, I will analyze the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility." See Keefer v. Colvin, No. CV 1:15-4738-SVH, 2016 WL 5539516, at *11 (D.S.C. Sept. 30, 2016); Ford v. Colvin, No. 2:15-CV-05088, 2016 WL 5171986, at *5 (S.D. W. Va. Sept. 21, 2016); Hose v. Colvin, No. 1:15CV00662, 2016 WL 1627632, at *5 (M.D.N.C. Apr. 22, 2016).

14

At the administrative hearing, William testified that a hernia complication in his back prevents him from standing for more than 30 minutes at a time and causes pain in his groin, back, neck, and left leg. R. 39–40. William testified that he cooks, cleans, and occasionally drives to Wal-Mart, but has no other chores or hobbies. R. 42–43.

The ALJ determines the facts and resolves inconsistencies between a claimant's alleged impairments and the ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). A claimant's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must first determine if the claimant suffers from a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." Id. If such an impairment exists, the ALJ must then determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig, 76 F.3d at 595 (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p.

The ALJ discussed William's subjective reports of pain and debilitating symptoms and provided a detailed narrative discussion of William's medical history both prior to and during the relevant period. The ALJ did not omit any relevant evidence in this discussion. The ALJ concluded that William's impairments could reasonably cause his alleged symptoms, but found

15

that his subjective allegations were inconsistent with the objective medical evidence. R. 19. The ALJ complied with the Craig factors used to determine the consistency of a claimant's allegations by discussing and citing to the relevant evidence in the record, which includes an analysis of the claimant's daily activities. See Taylor v. Astrue, No. 7:10–CV–149–FL, 2011 WL 2669290, at *2 (E.D.N.C. July 7, 2011) ("The ALJ must consider the entire record in making [a credibility] determination. . . . In addition to the objective medical evidence, the ALJ must consider a number of enumerated factors, such as the effect of symptoms on the claimant's daily life activities and the location, duration, frequency, and intensity of plaintiff's pain or other symptoms.") (internal citations omitted).

The ALJ explained that although William is "limited to a degree in his daily living activities as a result of his impairments, the daily activities that [William] does perform are inconsistent with his complaints of prolonged and consistent disabling functional limitations." R. 19. The ALJ explained that medical records showed that William's activity level was stable, he swam in a pool which reduced his pain, nerve block injections decreased his pain and improved his ability to do daily activities, he performed chores around the house, he prepared meals, and he drove to stores such as Wal-Mart. Id. The ALJ stated that "[s]uch activities are inconsistent with disability." Id.; see also Dolfax v. Astrue, No. 7:09-cv-67, 2010 WL 1488116, at *11 (E.D.N.C. Mar. 18, 2010) (finding that activities of daily living are a highly probative factor in determining the credibility of a claimant's allegations (citing Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986))).

I must give great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). I find that the ALJ's

16

reliance on William's daily activities to be proper, and I find that the ALJ's determination of the consistency of William's statements regarding the severity of his symptoms in light of the objective medical evidence is supported by substantial evidence.

**Hypothetical Question to Vocational Expert**

William argues that the ALJ erred in giving little weight to the hypothetical questions posed by his attorney to the vocational expert at the administrative hearing.

In order for a vocational expert's opinion to be relevant, it must be rendered in response to a proper hypothetical question setting forth all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50–51 (4th Cir. 1989). "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." Russell v. Barnhart, 58 Fed. Appx. 25, 30 (4th Cir. 2003).

At the administrative hearing, William's attorney posed the hypothetical of a person of William's age, education, and work background who was limited to occasional interaction with the public and use of his hands due to tremors, would be off task 15 percent of the time, would have to lie down three times a day, and has marked limitations in working with or near others without being distracted, performing at a consistent pace, and responding appropriately to routine work pressures in a usual work setting. R. 55–56. The vocational expert stated that such an individual would not be able to work. R. 56. The ALJ gave the questions posed by William's attorney "little weight" because they were "unsupported by the totality of the evidence." R. 20.

William does not challenge the physical findings in the RFC or contend that any part of the RFC is wrong. I concluded that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Bever and his decision to discount William's credibility. The hypothetical questions posed by the ALJ are therefore supported by substantial evidence.

Additionally, substantial evidence supports the ALJ's decision to give little weight to the questions posed by William's attorney, as the hypothetical questions did not "reflect those impairments supported by the record." Russell, 58 Fed. Appx. at 30.

## RECOMMENDED DISPOSITION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. For the foregoing reasons, I recommend affirming the decision of the Commissioner, **GRANTING** the Commissioner's motion for summary judgment, and **DENYING** William's motion for summary judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  August 16, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge